Filed 8/23/24  Garaventa v. Mangini CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| SILVIO GARAVENTA, JR., et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>RICHARD MANGINI, as Trustee, etc.,<br><br>    Defendant and Appellant;<br><br>LINDA GARAVENTA COLVIS, et al.,<br><br>    Respondents. | A164692<br><br>(Contra Costa County<br>Super. Ct. No. MSP15-02131) |

Seeking to end the longstanding enmity among her five adult children, settlor Mary C. Garaventa included in the family trust a provision creating a Special Trustee for Hostile Acts.[1]  This provision empowers the special trustee to designate a sibling's act as "hostile" and to limit trust distributions to that sibling for an unspecified length of time as a consequence.  The

---

[1] The parties do not point to any published California case discussing a similar provision, and we are not aware of any.

settlor's laudable effort to achieve familial peace has proven fruitless. This case represents the fifth appellate probate battle waged by the siblings, including four in the last year.[2] Its focus: the scope of the special trustee's authority. The designated peace process has become the newest battleground. We affirm the probate court's order declining to limit the provision.

BACKGROUND

Mary's children are Silvio Garaventa, Jr., Marie Louise Adler, Louisa Binswanger, Joseph Garaventa, and Linda Garaventa Colvis.[3] The family trust (Trust) provides that after Mary's death, the Trust estate is to be distributed evenly among five subtrusts for the benefit of the five siblings and their children. In 2013, Mary restated the Trust. The restated Trust provides the initial trustee is Mary and the successor trustee is Louisa or, if Louisa is unwilling or unable to serve, Joseph.[4]

In the 2013 restatement of the Trust, Mary added a provision targeting "Hostile Acts" by the siblings and their descendants. The provision creates the position of "Special Trustee for Hostile Acts" and provides, "Notwithstanding anything herein to the contrary, if any issue of the Trustor engages in a Hostile Act toward another issue or the spouse of an issue of the

---

[2] (See *Binswanger v. Garaventa* (May 11, 2018, A148363) [nonpub. opn.]; *Colvis v. Binswanger* (2023) 96 Cal.App.5th 393; *Colvis v. Binswanger* (Feb. 29, 2024, A163467) [nonpub. opn.]; *Colvis v. Binswanger* (May 2, 2024, A167860) [nonpub. opn.].) A sixth appeal was filed in a separate civil litigation between family members involving overlapping issues. (*Garaventa v. Binswanger* (Feb. 29, 2024, A165750) [nonpub. opn.].).

[3] For convenience, we will refer to the family members by their first names. No disrespect is intended.

[4] A 2015 Trust amendment did not change the identified successor trustees.

Trustor, the Special Trustee for Hostile Acts shall have the power to suspend any distributions otherwise payable to an issue of the Trustor for such period as the Special Trustee for Hostile Acts shall determine."

Mary died in 2015 and Louisa became trustee of the Trust. The special trustee for hostile acts is Father Richard Mangini (Special Trustee), the family's longtime priest. Instead of defusing the internecine battling, as Mary had hoped, the hostile acts provision has been weaponized by the siblings, who have lodged numerous allegations of hostile acts with the Special Trustee.[5]

The hostile acts allegation underlying the instant appeal involves the family business (the Company). The five siblings each own 6 percent of the Company's shares; the remaining 70 percent is held by the Trust. (*Colvis v. Binswanger, supra,* A163467.)[6] The five siblings also sit on the Company's board of directors. (*Ibid.*) The Company's value is substantial: the Trust's

---

[5] For example, (1) Joseph alleged Silvio, Marie, and Louisa committed hostile acts against Linda and Joseph by engaging in certain litigation tactics; (2) Joseph alleged Silvio, Marie, and Louisa committed hostile acts against Linda and Joseph by not making distributions from the Company; (3) Joseph alleged Silvio committed a hostile act against Joseph by " 'attempt[ing] to substitute himself for Jo[seph] as the managing member and bank signatory of SMG Group LLC' "; (4) Louisa alleged Linda and Joseph committed hostile acts by filing certain lawsuits; (5) Louisa alleged Linda and Joseph committed hostile acts by disclosing information at a Company board meeting; and (6) Silvio alleged Joseph committed a hostile act by filing a lawsuit against Silvio, Louisa, and Louisa's husband and son.

[6] On our own motion, we augment the record to include the record from this previous appeal containing these undisputed background facts. (Cal. Rules of Court, rule 8.155(a)(1).)

3

estate is worth more than $100 million and the Trust's 70 percent interest in the Company is its primary asset.[7]  (*Ibid.*)

For years, Joseph and Clark Colvis, Linda's husband, worked as senior managers for the Company: Joseph as chief executive officer and Clark as chief operating officer.  At a 2018 Company board meeting, when the board consisted only of the five siblings, Silvio, Marie, and Louisa voted to terminate the Company's employment of Joseph and Clark and replace them with nonfamily members.[8]  Linda subsequently asked the Special Trustee to find these votes hostile acts.  Joseph and Clark also filed lawsuits challenging their terminations.  The Special Trustee found that Silvio, Marie, and Louisa had committed hostile acts under the terms of the Trust by voting to terminate Joseph and Clark, but reserved ruling until the completion of litigation on what consequence, if any, to impose.

Silvio filed a petition in the ongoing trust proceeding seeking (among other relief) a ruling that the term "Hostile Acts" in the Trust does not extend to acts taken when acting as a Company board member.  Louisa joined in this aspect of Silvio's petition (we will refer to Silvio and Louisa, collectively, as Petitioners).  The Special Trustee opposed the petition.  Linda also filed an opposition and Joseph joined in Linda's filing.  The probate court found that, under the plain language of the Trust, hostile acts include acts taken in the capacity of a Company board member.

---

[7] In their briefs on appeal, Silvio and Louisa repeatedly assert the Company is worth $500 million.

[8] The facts underlying these decisions are hotly contested and not relevant here.

Petitioners appealed and the Special Trustee filed a cross-appeal.[9]

DISCUSSION

I.     *"Hostile Acts"*

In their appeal, Petitioners argue the term hostile acts, as used in the Trust, does not encompass acts taken when acting as a member of the Company's board of directors or otherwise in an official Company capacity. We disagree.

" ' "In construing trust instruments, as in the construction and interpretation of all documents, the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker." [Citations.]' [Citation.] '[Probate Code] [s]ection 21102 provides, "[T]he intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." ' [Citations.] ' "In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." ' " (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 944.) " '[I]n ascertaining the intention of the trustor the court is not limited to determining what is meant by any particular phrase but may also consider the necessary implication arising from the language of the instrument as a whole.' [Citations.] [¶] In addition, we need to ' " 'consider the circumstances under which the document was made so that the court may be placed in the position of the ... trustor whose language it is interpreting, in order to determine whether the terms of the document are clear and definite, or ambiguous in some respect.' " ' " (*Ammerman v. Callender* (2016) 245 Cal.App.4th 1058, 1074.) The parties

---

[9] Linda and Joseph filed a joinder in the Special Trustee's brief on appeal.

5

agree that, because the probate court did not consider extrinsic evidence, our review is de novo.  (*Id.* at p. 1072.)

The Trust provides, "A Hostile Act is any intentional act by an issue of the Trustor that materially and adversely affects the peace and harmony of other lineal descend[a]nts of the Trustor.  Examples of this conduct include, but are not limited to, initiating a physical altercation against another issue or the spouse of an issue, intentional disclosure of confidential information detrimental to family peace and harmony, and initiating legal action against a lineal descend[a]nt or the spouse of a lineal descend[a]nt without obtaining the prior written consent of the Special Trustee for Hostile Acts.  The written consent to initiate legal action shall include a determination that there is no reasonable alternative to resolve a conflict other than initiating legal action; such action is necessary to achieve family peace and harmony; and will benefit all concerned."

In determining Mary's intent, we begin with her inclusion of this rather extraordinary provision in the Trust.  To say it reflects a concern about conflict among the siblings and their families is an understatement.  Mary determined that the likelihood of serious infighting—including physical fights, publicly revealing secrets detrimental to the family, and suing each other—was so significant as to warrant authorizing limitations on the siblings' inheritances as a deterrent.

Moreover, Mary's intent behind the hostile acts provision must be evaluated in the context of the relevant surrounding circumstances; principally, the significance of the Company to family members.  At the time Mary added this provision, Joseph and Clark held senior management positions at the Company; each of the siblings sat on the Company's board of directors and held a 6 percent ownership in the Company; and either Louisa

6

or Joseph would, after Mary's death, become trustee of the Trust and thus control the 70 percent ownership of the Company held by the Trust. Absent a clear indication to the contrary, it beggars belief to conclude that Mary would exclude conduct while acting in an official Company capacity from the hoped for deterrence of the hostile acts provision. We agree with the Special Trustee's reasoning, stated in a 2019 letter: "The settlor knew that her children would deal with each other in the business context, and given that she obviously wanted peace in the family, it would have been strange for her to exclude from the definition of 'Hostile Acts' the very circumstances in which her children were most likely to be hostile to one another."

Against this backdrop, Petitioners' overly legalistic arguments fail. Petitioners first contend hostile acts are acts by "an issue of the Trustor," and the word "issue" is limited to individuals acting in an individual capacity. Petitioners point to the Probate Code's definition: " 'Issue' of a person means all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent." (Prob. Code, § 50.) The Trust provides a similar definition: "The term 'issue' shall refer to lineal descendants of all degrees . . . ." Petitioners assert this definition necessarily excludes an individual acting in an official capacity (i.e., as a corporate board member). We disagree. The siblings are Mary's "issue" whether they are acting as individuals or as Company board members.[10] Authority governing the *legal* liability of corporate board members is inapposite. The sole question here is

_____

[10] That the Company and its board of directors are not "issue" is of no moment. The acts deemed hostile were the votes by Silvio, Marie, and Louisa leading to the termination of Joseph and Clark, not the subsequent acts of the board and/or the Company.

7

whether Mary intended the word "issue" to exclude her children when acting in an official Company capacity. She did not.

Petitioners next point to the Trust language that hostile acts are those affecting "the peace and harmony" of other family members, and argue the phrase "peace and harmony" "necessarily excludes an individual officer's corporate behavior" and instead "refers to interpersonal, familial relations." Again, in the context of this family's dynamics, it makes little sense to believe Mary took the extraordinary step of adding the hostile acts provision but intended to immunize the siblings from the consequences of using their official positions with the Company to harm each other. Given the Company's financial value to family members and their management and oversight roles, the family's interactions and its peace and harmony were and are substantially intertwined with the Company. Although Petitioners assert that the three nonexclusive examples of hostile acts set forth in the Trust involve personal rather than business-related conduct, a person can disclose confidential information or initiate litigation while acting as a Company officer or board member. In short, we see no basis to conclude that Mary intended the term "peace and harmony" to exclude conduct while acting in an official Company capacity.

Petitioners point to a separate Trust provision granting the trustee broad authority over Company business, and further point to a Company shareholders agreement executed by Mary four months before she added the hostile acts provision that does the same.[11] Petitioners argue these grants of

---

[11] The Trust provides the trustee "has the power to continue or participate in the operation of any business or other enterprise that is part of the trust property and may incorporate, dissolve, or change the form of an organization of the business or enterprise" and "consent . . . to the reorganization, consolidation, merger, dissolution, or liquidation of a

8

authority to the trustee—Louisa or Joseph after Mary's death—demonstrate Mary did not intend to limit that authority by allowing the Special Trustee to deem acts exercising the authority hostile. It is indisputable that the Trust and the shareholders agreement grant the trustee substantial authority over Company business. But we draw the opposite conclusion: in light of Mary's concern over the siblings' contentious relationships and her wish to deter infighting, it is most consistent with Mary's intent to apply the hostile acts provision to acts taken in an official Company capacity and thus ensure that Louisa or Joseph do not use this broad power to commit hostile acts against other family members. This conclusion is buttressed by the fact that the hostile acts provision is prefaced by the phrase, "Notwithstanding anything herein to the contrary . . . ," indicating that the Trust's grant of broad authority over Company business to the trustee should not be construed to limit the hostile acts provision.

Petitioners argue that, in light of Father Mangini's lack of business experience, Mary could not have intended to authorize him to deem hostile an act taken in an official Company capacity. Petitioners misconstrue the nature of the Special Trustee's role. The Special Trustee does not review official acts for their business purposes, but instead determines whether any act by an issue is hostile under the terms of the Trust and, if so, what consequences should follow.

---

corporation or other business enterprise . . . ." The shareholders agreement provides the majority shareholder has unilateral discretionary authority over a number of Company management decisions including "[e]mployment of officers," "[s]ubstantial change of the type of business conducted by such Company," "[b]orrowing or lending money other than in the ordinary course of business," and "[v]oluntary dissolution."

Petitioners' complaints about the wisdom of the Special Trustee's decisions are not relevant to our determination of the sole issue presented in Petitioners' appeal: whether the hostile acts provision applies to acts taken in an official Company capacity.

Finally, Petitioners argue that construing hostile acts to apply to acts taken in an official Company capacity will create a chilling effect that conflicts with their fiduciary duties as board members. But the possibility that an act taken in an official Company capacity will be deemed a hostile act is not the only potential adverse consequence; most significantly, given the siblings' litigiousness, such an act could well be the target of one or more lawsuits. Petitioners fail to explain why their conduct as board members would be impacted more by our construction of the hostile acts provision than by the possibility of other adverse consequences. In any event, the sole issue before us is Mary's intent in adding the hostile acts provision, and Petitioners' argument about purported chilling effects does not undermine the considerations and analysis discussed above.

The siblings show no signs of reducing their infighting over the enviable estate left them by their parents. They have been chastised by Mary and by the Special Trustee, to no apparent avail.[12] Mary was well aware of

_____

[12] In April 2020, the Special Trustee wrote directly to the siblings: "Your father and mother would be appalled at all the litigation and all the provocation that you have engaged in. [¶] . . . I am deeply concerned that you are pursuing litigation in an impossible attempt to dispel the ghosts of the past. No matter how real the hurt, paying lawyers and going to court is not going to heal old wounds. . . . [¶] The COVID-19 crisis gives each of you an opportunity to start anew. It should be obvious to each of you that you are tremendously better off than so many who are now suffering. And, not only do you have your health, but your parents left you inheritances that give you wonderful opportunities to live well and to do good. . . . [¶] It pains me to see what you are doing to each other, but I know that it is not too late for you

10

their intractability, which led her to include this highly unusual provision in the Trust. Given the significance of the Company to the family's wealth and the family's substantial involvement in its operation, we conclude Mary intended the hostile acts provision—her attempt to deter her children from fighting after her death—to encompass acts taken in an official Company capacity.[13]

II.  *Special Trustee's Appeal*

The Special Trustee appeals two discrete aspects of the probate court's order.

First, the Special Trustee contends the order erroneously states that an evidentiary hearing on the petition was requested by the Special Trustee, when in fact the request came from Joseph and Linda. Petitioners do not dispute the contention, which is supported by the record. We will direct the order be so modified.

Next, the Special Trustee challenges the following portion of the probate court's order: "[T]he court will make general comments concerning the [Special Trustee's] role in the administration of the Trust based on language of § 2.7. Thus, pursuant to Probate Code § 17206, the court provides the following findings and rulings that the parties, including the [Special Trustee], should use to guide the ongoing administration of the

---

each to follow a better path that can provide each of you with peace and satisfaction rather than misery."

[13] We emphasize that this is the sole issue before us—and the sole issue we decide—on Petitioners' appeal. Contrary to suggestions by Petitioners' counsel at oral argument, we have not been asked to decide, nor are we deciding, any other issue, including, but not limited to, what are the elements of a hostile act; whether any hostile act ruling by the Special Trustee is justified by the evidence; or any issue as to the allowable or appropriate consequences for any hostile act.

11

Trust. . . . [¶] . . . [¶] If the [Special Trustee] finds that a particular action constitutes a 'Hostile Act', then the Trust authorizes the [Special Trustee] to take either or both of two consequential actions. The [Special Trustee] may (1) suspend distributions otherwise payable to an issue of Mary for a period as the [Special Trustee] determines; and/or (2) award attorney fees to a victim of a Hostile Act, payable from the trust of which the perpetrator of the Hostile Act is an income beneficiary. This means that, with regard to suspension of distributions and fee shifting as a consequence of any Hostile Act finding, the [Special Trustee] has the power to *instruct* the general trustee. Any action[s] that the [Special Trustee] takes beyond these powers are in excess of the [Special Trustee]'s statutory authority and are likely a breach of trust." The Special Trustee argues the court erroneously found the Special Trustee's authority over distributions is limited to instructing the general trustee, and instead, the Special Trustee has the authority under the Trust to suspend distributions directly.

In the record before us, the Special Trustee has made no final determinations that distributions should be suspended. Indeed, with respect to many or most of the hostile act complaints, siblings have filed lawsuits over the same conduct, and the Special Trustee has repeatedly stated his intention to refrain from deciding the consequences of any hostile act until litigation over the same conduct has completed. Because the Special Trustee has not sought to suspend distributions to any hostile actor, the issue of how he may implement any such suspension is not ripe.[14] " 'The ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions.' [Citation.] Generally speaking, a

---

[14] At our request, the parties filed supplemental briefs on this issue.

controversy is ripe ' "when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." ' [Citation.] 'In contrast, unripe cases are those " 'in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.' " ' " (*Redondo Beach Waterfront, LLC v. City of Redondo Beach* (2020) 51 Cal.App.5th 982, 1000.) Contrary to Louisa's argument, her contention that the Special Trustee improperly extended his authority to Company business and Trust administration decisions does not create a ripe controversy on the issue of how the Special Trustee may implement any future suspension of distributions as a consequence of a hostile act finding. Accordingly, this issue is not properly before us.

Because we are not deciding this unripe issue, our affirmance of the probate court's order does not constitute law of the case as to this aspect of the order. (See *In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1650, fn. 1 ["because this court expressly stated it did not decide that issue [citation], there is no 'law of the case' principle applicable to this issue"].)

## DISPOSITION

The order is modified to reflect that an evidentiary hearing was requested by Joseph and Linda, and not by the Special Trustee. As so modified, the order is affirmed. The Special Trustee shall recover his costs on appeal.

13

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A164692)